Consolidated case numbers 16-6320 and 16-6321, United States of America v. Samuel A Rosse III. Oral argument not to exceed 15 minutes per side. Patrick Benko for the appellant. You may proceed. May it please the Court. My name is Patrick Benko and I do represent the appellant, Mr. Rosse. I am here outlining probably about a half a dozen issues. A couple of issues that Mr. Rosse has raised in the district court deal with speedy trial, prosecutor of vindictiveness, and prosecutor of misconduct. And then also, towards the end of the case, after it was remanded from this court, the issue with regard to getting a new trial or having the plea agreement set aside. Initially, I think it's important to note, Mr. Rosse was originally charged in May of 2012 or in early 2012. He was out on pretrial conditions for a period of a year. It's clear on the record prior to our involvement in the case that he got a little sideways with his trial counsel. He sought a second opinion and as a result of that second opinion, you start seeing the timeline that results in these arguments being made. Mr. Hancock, who is also representing Mr. Rosse in this appeal but is not here today, he filed a motion to dismiss, a statutory motion to dismiss under 3161. As a part of that motion to dismiss for speedy trial or lack of speedy trial, he also submitted afterwards an affidavit regarding an incident that occurred out in the hallway in September 16th of 2013. Actually, September 18th of 2013. He had a conversation with the assistant U.S. attorney, Christopher Scruggs. I mean to interrupt you. I'm interested in what you have to say. Are you just giving us sort of a general background or are you giving the facts that relate to one of these particular issues? Facts that relate to one of the particular issues. It's a starting point for the speedy trial. It's the lead up to the speedy trial. You're talking about which speedy trial issue now? I'm talking about the first speedy trial issue that was filed. Which has to do with whether it should preclude a future trial or not. Is that the issue? Correct. And I think they both eventually... We're not debating whether there was a speedy trial violation with respect to that issue. It's just whether it should preclude future... Correct. Is that the issue you're talking about now? That is... And I'm sorry to make that clear. Let me make that clear. Yes. He was originally granted... Why don't we just go through the factors then that go to that kind of a determination and see whether they apply. Well, that's what I was leading up to. So what I'll do is I'll change that a little bit. Obviously, the issue with regard to the pretrial, the Sixth Amendment argument, it was granted on a 3161, under 3161. But we were denied the ability to argue or we were denied the ability... The court did not rule that it was prejudicial. And we argued that it should have been prejudicial. And the reason why it should have been prejudicial is during the period of time that that issue... By prejudicial, you mean whether it should preclude a future trial? Yes. Exactly. Yes. Under 3161. And originally, I agree with the court. Originally, it was a pretrial issue. I mean, it was a statutory violation. And I think if it was just a statutory violation, I would not be able to be here to argue whether prejudice attached or not. But I think in this particular case, prejudice did attach. What was the prejudice? Well, I think prejudice was... And that's where I was getting back with Mr. Scruggs. Mr. Scruggs indicated in the hall that he did not feel that the mental evaluation that he was going to be requesting was meritorious. He felt that our client was malingering. But, too, he also acknowledged that we felt we had a speedy trial issue out in the hall. Which is the reason why Mr. Hancock supplied an affidavit to the court. Because we felt, and he felt at the time, that it was a bit disingenuous to say, Hey, look, we want to have a mental evaluation. And we also want him to be taken into custody for that mental evaluation. And we want him to be sent away for that mental evaluation. All the while, while we recognize that there is likely a speedy trial violation. So... The speedy trial violation, I'm sorry about the facts, but the speedy trial violation had occurred already when this conversation with Scruggs occurred? Yes. The issue out in the hall was related to, Why are you proceeding with a competency question when we have a meritorious, what we believe a meritorious speedy trial issue that needs to be addressed by the court? And the government decided to press forward knowing that. And so that was the reason why Mr. Hancock submitted the affidavit to show, Hey, look, the government's in agreement that there's a speedy trial violation, Judge. The state's in, I mean, Mr. Rossi's in agreement that there's a speedy trial violation. So why are you not mentioning that issue, but ignoring that issue, going to the court and saying, Hey, look, we think he's got a mental issue. We want to press forward with a mental evaluation. We want to take him into custody. And so what did the court do when presented with a Hancock affidavit? Well, we outlined it in a brief. And then it was presented to the court. The court granted, based upon the magistrate's report of recommendations, granted the speedy trial violation, but determined that there was no prejudice. Was there a competency exam in the interim before the speedy trial violation was found by the district judge? Yes. What it appears on the record, it appears that the district court was just not going to rule on the speedy trial issue, even though the magistrate made the recommendations. And it continued on in perpetuity and perpetuity until the evaluation was done, well after the recommendation by the magistrate. And then once he arrived in January of 2014, yeah, it was actually 2014, he arrives back from that competency hearing. On the same day he arrives back, the district court says, I'm going to adopt the findings of the recommendation, find that a speedy trial violation did occur, but I'm going to deny that there was any prejudice. So what is the prejudice? That's still the question that I have. The prejudice is the 125 days that he spent in custody at a mental evaluation when the court was provided information that the likelihood that he had a meritorious speedy trial issue. So they couldn't have done a competency evaluation if the speedy trial motion had been granted and a new indictment had been filed and then a competency evaluation had been sought? I think that it would have been appropriate at that point in time. But I think that when you raise a motion to dismiss a speedy trial violation, I think that that trumps any determination as to whether competency should take place or not take place, especially when Mr. Rossi is in custody during that time. So is there a case that you would rely on? I'm sorry. I'm going to hear the answer to your question. Well, we were not able to find any case with that factual situation. That is, they're off to a mental examination. There's a speedy trial issue before that mental evaluation is supposed to be scheduled. What happens in the meantime? I think that the rule in the Sixth Amendment requires that court, once that prima facie case is made with regard to that speedy trial issue, I think that that takes precedent over mental evaluation. I think a hearing should be held. I think that the issue should be resolved prior to someone being sent off. Sixth Amendment. I'm sorry? Your Sixth Amendment theory about how the Sixth Amendment . . . Well, under the factors in Wingo v. Barker. I think under those factors, the delay, the unnecessary delay, because we're talking about a speedy trial violation under the statute that was only 77 days long, according to Judge Claxton, who was the magistrate on that case. Okay? That's interesting. But what's more interesting is they sent him off after the state, the government, concedes, after the magistrate acknowledges that there's a likely violation. None of that takes precedent over we're going to get him to a mental evaluation. If they thought that he was not competent, don't they need to find that out before they decide what they're going to do? That wasn't the issue, though. The issue that was in the record prior to our involvement in the case was that he may have had a mental issue with regard to possible suicide or whatever else, and Mr. Hancock references that in the record. But there was no issue. No one made the allegation that we have a competency issue or we have a fitness issue. It was just he had a mental episode. We want to get more information on that. And the affidavit out in the hall as to Chris Scruggs saying we think he's malingering, well, that's not a good basis to go get a mental evaluation. Counsel, I'm sorry, but I get lost because you raise a number of issues which is entirely appropriate. But if I'm not sure which issue you're talking about, it's not doing me any good. And I know you have to respond to questions which may relate to other issues. Right. But the first issue, let's do the first one first. Maybe you're done with it. I don't know. I thought the first issue had to do with whether the speedy trial dismissal was with prejudice or not. That's not a Sixth Amendment claim, is it? Right. No. So when you're talking about Sixth Amendment, you're talking about a different issue, even about a different period of time, right? Right. Now, isn't it true with respect to, unless you want to just leave that issue. Okay. The first issue has to do with prejudice or not. Doesn't the statute provide the criteria for making that determination? Yes, the statute does. Like the seriousness of the offense, the facts and circumstances of the case, not were you harmed by the delay, but what is the impact of a re-prosecution on the administration of the chapter and the administration of justice? So that sounds like what kind of prejudice did this do to him on retrial? And to say, well, he had to be in jail. I mean, are you saying he wasn't able to prove something because he was in jail? I think later on, I think that those issues develop, which is the reason. Right, but I'm talking about this issue here. Yeah, I understand that. But what I'm saying, and I've outlined it, Judge Moore asked questions and Judge Merritt asked questions with regard to what was the prejudice. Well, the prejudice was that he was in custody for 125 days beyond the speedy trial violation. Okay. But I'm not asking specifically, I'm not asking generally what the prejudice is. I'm asking how do you, presumably the district court looked at this and ruled against you on that issue. Why was the district court wrong when it ruled that if you balance the seriousness of the offense, the facts of the case, and the impact of re-prosecution on justice, why were those wrongly determined by the district court? As to that issue, I don't necessarily. That's the issue, number one. Then you go on to number two. And I preface that by saying because there's another speedy trial issue that's down the road, and I think there's some confusion with regard to that. But as to the statutory violation, the prejudice was the fact that he was in custody for 125 days beyond the speedy trial when everyone, all the parties, all officers of the court were well aware of the fact that there was a likely speedy trial issue. Mr. Hancock prepared an affidavit outlining the government's position, that is, we believe he's malingering. That had an impact. Does that tell us how serious the offense was? Well, no. What about the impact of a re-prosecution on justice? Well, the impact of a re-prosecution on justice, I don't think necessarily those set of facts that I've outlined necessarily gets us to that point. So the two out of three you haven't addressed, and the other is just the facts and circumstances of the case. Is that the one you're talking about? I think I've addressed them enough in the brief. I think that the second issue, the facts and circumstances surrounding it are the issues that outweigh. You're saying it's one of the facts and circumstances of the case is that it was a really bad speedy trial violation, not just the technical. Exactly. I think that that's the primary issue, and I think you have to do a waiving. And I am out of time. I'll save the rest of my time for rebuttal. We will rely on your briefs for the other issues. Thank you. Thank you. May it please the Court. There are several issues that have been raised by the defense, and I know that my opponent spent the bulk of his time discussing the first speedy trial issue. It's our intention to rely on the brief as to the various speedy trial issues. I did want to spend some time talking about the district court's proper denial of the motion to dismiss for vindictive prosecution, as well as the denial of the motion to dismiss for the Brady claims and also the procedural posture that we find ourselves in. And, of course, if the court has any questions as to the speedy trial issues, I'm happy to entertain those as well. Looking first at the motion for the denial of the motion for vindictive prosecution, it's important to note that it's an abuse of discretion standard, and here it was a proper exercise of the court's discretion to deny the motion to dismiss for vindictive prosecution. The two issues that had been raised were that the protected rights that had been exercised were a motion for bail, as well as the motion to dismiss for speedy trial, which we had just been hearing a little bit about. Importantly, neither one of those were dispositive, and as a result, the stake that the prosecution had in deterring or in punishing the defendant for filing those motions simply wasn't there, and that's an issue that was not developed by the four elements for a vindictive prosecution claim. You're talking about vindictive prosecution. Yes, Your Honor. But one of the protected rights that was alleged to have been at issue was the filing of that first motion to dismiss for speedy trial. So that's where the overlap is there. However, in that case, it was not dispositive on the case because it was dismissed without prejudice, and ultimately the stake for the government was lessened. If it were dismissed with prejudice, it would hard to mount a vindictive prosecution subsequently. Your Honor, it would potentially be a different situation, because I think then we might be a little bit closer to this Court's opinion in United States v. Lideau, wherein once there was a dispositive motion that effectively ended the prosecution, then that raised the stakes. But this case is different from United States v. Lideau because we're in a different procedural posture. There, there actually were findings in the district court as to the various elements for making out a vindictive prosecution claim. And we don't have that here. We have, in fact, the complete opposite. And Lideau really is illustrative of the deference that is given to the district court's findings on abuse of discretion review. Moreover, as I previously noted, that was a dispositive motion, whereas here the speedy trial motion was not dispositive because it was dismissed without prejudice. Second, the issue of the bail motion, again, that was not something that had an effect on the case generally. Although United States v. Andrews does contemplate that there could be a stake in a bail proceeding, it didn't say that there was a per se rule that the exercise of a motion for bail should apply. And that seems to be what Mr. Rossi is advancing today. When, you know, in the analysis on vindictive prosecution, when you're looking at pretrial motions that don't have an effect, then necessarily the stake that the prosecution has in the exercise of those motions needs to be looked at closely. And here that has not made out, so that claim should fail. In addition, as we set out in the brief, there was the additional information that was learned as well between the filing of the indictment in the second case and the filing of the superseding indictment, which justified the additional charges in the superseding indictment. As to the motion to dismiss for the Brady violations, as we noted in our brief, that really wasn't discussed. The post-free man proceedings really weren't discussed in the defendant's brief. And it's notable because certain allegations were made as to Brady violations, but once there was an evidentiary hearing and once the court actually looked at what the alleged Brady violations were, the court properly determined that there were not any Brady violations that occurred at all. And it's our position that that was the correct determination. Namely, there were two issues that were presented by the defendant. One was that there was an alleged undisclosed agreement between Jeffrey Colberth, who was a cooperating witness, and the United States regarding his cooperation in that case that resulted in favorable treatment by the state of Arkansas in his prosecution. Notably, though, once we had the evidentiary hearing after remand, then the court actually heard from the prosecutor who handled the case, who advised that he was aware that Colberth had cooperated, but that he had made that decision as to what the appropriate sentence should be in that case without any sort of interaction or interference with federal authorities. Why wasn't this disclosed? Your Honor, the transcript itself wasn't in existence at the time of the sentencing hearing. The fact that he received a 10-year probation sentence certainly was disclosed, and he was cross-examined on that at the original sentencing hearing as well. The allegation was that there was something more that had not been disclosed, that there was some sort of interaction between the federal government that obtained that favorable result for Colberth. But the results of the evidentiary hearing showed that that didn't happen. So it's one thing to look at that transcript in isolation, and it certainly looks like maybe there was something, but once the record was actually developed as to what happened, the district court appropriately determined that there was no violation. So essentially it wasn't disclosed because it didn't happen? Yes, Your Honor. The second issue was an additional conviction from Paula Colberth. And as to that, the United States conceded that there was a 2014 conviction that had not been provided to the defense. However, it's our position that it was cumulative, and ultimately that was what the district court found as well. Paula Colberth was cross-examined extensively in the original sentencing hearing, and she was confronted with her various convictions for methamphetamine distribution and the fact that she even had a pending case at the time. Based on the evidentiary hearing after remand, the district court appropriately found and credited Paula Colberth's testimony that there was confusion as to when the most recent conviction was. The allegation stemmed from whether Paula Colberth testified truthfully when she said that her most recent conviction for felony methamphetamine distribution was in 2010, as opposed to 2014. Her explanation during the evidentiary hearing was that she was confused by the question, that she thought the question was asking about her most recent conviction that resulted in incarceration, which was the 2010. The district court also noted that the nature of the questioning in the prior convictions was in itself rather confusing and therefore determined that it wasn't a willful misstatement by Ms. Colberth. But at the end of the day, Mr. Rossi failed to show that he was prejudiced by any of these, the nondisclosure as to the Paula Colberth conviction and the nonexistence of the Jeffrey Colberth alleged Brady material. In any event, had there been any prejudice, it was cured by the fact that we did have a remand, we did have an evidentiary hearing wherein the district court could be presented with these additional documents and make a determination as to whether it affected the prior credibility findings that had been made during the sentencing hearing. So it's our position that the court should affirm the district court as to those issues. Now, finally, I want to spend a little bit of time talking about this issue of what the purpose of the remand was and the procedural aspect of that. Mr. Rossi has advanced the argument that this should be viewed as a remand for the purpose of resentencing and points to various cases, including United States v. Garcia Robles, in which the court said when there's a general remand and the case is remanded for resentencing, that that entitles a defendant to a de novo sentencing hearing, and he alleges that it was error for there not to have been a de novo resentencing hearing after the remand. It's our position that our case here is distinguishable from all of those cases because the panel never reached the merits, the case was never briefed, and it was remanded by motion, by consent of the parties, so that we could reopen the record, supplement the sentencing proceedings, and allow the court to determine if there was any issues related to these allegations of impropriety. If there had been any developments in the interim between when the original sentencing occurred and when the resentencing occurred, could the defendant have raised those developments, those hypothetical developments, during that period? Yes, Your Honor. Had it been determined that there was a Brady violation, and— Even separate from that, like suppose the law had changed, or suppose he had suddenly become a good person, or he had suddenly become a horrible person, all sorts of different hypos about what could have happened, in addition to what you're basically saying is there's no Brady problem, and the issue that we remanded on had to do with Brady. But what if other things had happened in the interim? Could that district court have considered them if they were presented to him or her? I think the answer to that is yes, but I don't think that the concepts of a general versus a limited remand are really applicable in a situation like this where the panel had not reached the merits in the first instance. I think certainly going back to the Brady allegations, had there been Brady allegations, and then that could have potentially affected the credibility findings, and therefore could have affected the guideline calculation, then certainly a resentencing would have been appropriate there. It's important to note that the court had invited the parties to submit evidence as to these Brady issues on the motion to dismiss, as well as any information related to sentencing, and the only things that were submitted to the court were the motion to dismiss for the Brady allegations. This is the second time around in the district court? Yes, Your Honor. So did the defendant at any time after our remand ask for something specific to be considered by the district court other than the Brady issue that was remanded? I don't believe so, Your Honor. So were there briefs filed in the district court, and was there an actual oral hearing in the district court? Yes, Your Honor, and I guess I do want to clarify my statement to your most recent question. No other information was submitted as to the sentencing. I think there were inquiries that were made to the district court about whether there would be an additional hearing. However, at no point did Mr. Rossi say what that would be about or make any sort of specific request to revisit issues in light of the new information that had been provided to the court. So did the two sides submit sentencing memoranda to the district court on the resentencing? No, Your Honor. It was all done orally then? The only issues that were done after remand were the evidentiary hearing on the motion to dismiss and alternatively the motion to withdraw the guilty plea. There was never anything that was submitted, although the court invited both sides to submit anything on the sentencing issues, that was not done. But there is a well-developed sentencing record. There was a 3553 analysis that was done. There was an opportunity for the defendant to allocate. All of that was done in the context of the initial sentencing hearing. So is that presented to us now because you've just told us that the first panel didn't consider that? I think it would have been. It could have been presented, but it hasn't been presented. It could have been presented and was not presented. For these reasons, we ask the court to affirm the district court. Thank you. Thank you. Real quick, I want to touch on the new sentencing hearing. We were advised by this court that we were getting a new sentencing hearing. Where were you advised? We were advised by the order that was granted, the joint order, that Mr. Rossi was to receive a new sentencing hearing. And although we did do that, in addition to that, we also raised the issues with regard to Brady. But there was no indication, and I disagree with Mr. Erskine. This is a one-page order, at least if I'm reading the right order, from the circuit, July 29, 2015. I don't see where you say you were granted by the Sixth Circuit a new sentencing hearing. Can you tell me where it is? That was our understanding. I can't say specifically, but our understanding was it was remanded for the purpose of having a new sentencing hearing. It's been briefed, and I felt that we alluded to those records as to where it is that we were getting a sentencing hearing. But this court speaks only in writing. Correct. And unless you're pointing me to something that is not this one-page document, I'm mystified where you think you got a new sentencing hearing. I think it remands on certain issues, but in any event, I'll let you go on. I don't want to misspeak with regard to that, but there was the impression that we were going to get another sentencing hearing. There were inquiries. Mr. Erskine is correct about that. We were operating under the belief that not only were we getting the hearing with regard to the Brady violence issues, but also we were going to be able to address those issues at resentencing for the reasons that you pointed out. So did you raise those issues in front of the district court then? Not issues specifically as to sentencing because we thought we were getting a sentencing hearing. We just got an order one day saying that he's being sentenced. We never got the sentencing hearing that we thought we were going to be receiving. Did you file a paper then? No. I want to get back to the vindictiveness. If I can address the vindictiveness argument to try to give you an explanation. We had problems in that court, not specifically with Judge Folks, but with the prosecution from the time that Mr. Hancock outlined in his affidavit what that conversation was out in the hall. The government was very upset about it. In their pleadings, they accused us of lying consistently regarding that conversation. There was no lying about it. They never rebutted the affidavit that was submitted by Mr. Hancock. From that point on, I remember Mr. Rossi got a 27-year term. He wasn't a career offender. He was not an armed career offender. He had no priors. He got 27 years out of the box on a first-time offense. So when we filed our affidavit and the case was dismissed, we went back in there because clearly the government was upset about the affidavit. After that, the indictments knew when the District Court granted the speedy trial violation. We got a new indictment. The indictment, in addition to alleging the allegations that were in the original indictment, also added a conspiracy charge. And then, on top of that, went after all of Mr. Rossi's assets, something that was not done in the first petition, which is the reason why we started researching the issue with regard to vindictiveness, because everything was getting amped up. The ante was being amped up. And that's exactly what the case law did. Then, after that, we get relief. The indictment comes down. We go in front of a magistrate judge. The magistrate judge lets him out, says, we're going to give you conditions. Immediately, the government filed an appeal from that to Judge Folks, get it back to Judge Folks. Now, remember, there was no pretrial or bench hearing. He was remanded into custody in order to do the competency. Well, now the government had a new position with regard to whether he should be out or not out, and they filed papers to explore that issue with regard to detention. But Judge Vescavo, who was the magistrate, was going to let him out. And then, after that, we find out that the government attorney didn't give all the information to Judge Vescavo except held it to the chest and decided that. He felt that she was going to grant or deny our request for detention or deny our request for conditions of release. And so, therefore, he didn't give up. He didn't give any information to Judge Vescavo that was relevant to the issue. Held it close to the vest and then goes back and then says to Judge Folks and then says, here's what we're going to offer. But what was interesting about that, too, is that now we're getting new information, information that was never presented to us in front of the magistrate. Now we're getting new information. But there's an outline of all sorts of facts leading up to what was going on in between the time that he got a grant for not only the speedy trial issue but also the conditions of release by Judge Vescavo. And then everything got amped up. You see a new charge. You see warrant charges. You see more allegations with regard to what it is that Mr. Rossi did dating back to 2013. Information that they already had. And I just think that the record is very clear with regard to the incidents that were taking place in between those two times. I'm asking for relief. Mr. Rossi is asking for relief. Asking for the matter to be remanded, the case to be dismissed, and or for him to get the opportunity to withdraw his guilty plea under the arguments that we made. I thank you for the Court's time. Thank you very much. And I understand, Mr. Benka, that you were appointed. Sorry, I lost my voice here. That you were appointed pursuant to the Criminal Justice Act, and we want to thank you for your service. And we thank you both for your argument. The case will be submitted.